# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TODD SWEET, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:07-CV-2082 CAS |
| WALTER CRIGLER, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Pending before the Court is defendant Walter Crigler's motion for summary judgment. Plaintiff opposes the motion. The motion having been fully briefed is ripe for review. For the following reasons, the Court will grant defendant's motion for summary judgment and dismiss plaintiff's claims against him.

*Background*

Plaintiff brings an action against defendant Crigler under 48 U.S.C. § 1983 for derivation of his rights under the Eighth Amendment. Plaintiff was an inmate in the St. Louis County Department of Justice ("St. Louis County jail") awaiting trial. He alleges in his complaint that defendant Walter Crigler, who was a corrections officer working in the jail, failed to intervene to prevent plaintiff from being attacked by another inmate. Plaintiff alleges the other inmate verbally threatened plaintiff with physical harm in front of defendant Crigler, and shortly thereafter, viciously attacked him in defendant Crigler's presence. Plaintiff also alleges that once the attack began, defendant did not take the necessary steps to prevent the violence from escalating. Plaintiff states he suffered severe injuries as a result of defendant's deliberate or reckless indifference to plaintiff's safety.

Defendant moves for summary judgment on the grounds that plaintiff suffered no serious, permanent injury. Defendant also argues that he did not have a sufficiently culpable mind to be liability under § 1983 in that he did not know the other inmate intended to attack plaintiff.

*Summary Judgment Standard*

The standards applicable to summary judgment motions are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029

(quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993)

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

*Facts[1]*

On October 15, 2007, plaintiff was an inmate at the St. Louis County Jail awaiting trial. At the time, plaintiff was housed in POD 7D. Defendant was a correctional officer for the St. Louis County jail and his duties included managing, controlling, and supervising approximately 65 inmates, who were housed in POD 7D.

At approximately 1:50 p.m. on October 15, 2007, plaintiff was using a typewriter when Rafael Jones ("Jones") approached defendant to complain that plaintiff was using the typewriter. Prior to this date, there were no problems between Jones and plaintiff, other than minor verbal exchanges. Plaintiff had never reported that Jones posed a threat or problem to him.

After Jones complained to defendant regarding plaintiff's use of the typewriter, Jones turned to plaintiff and said angrily, "I'm going to get your punk ass, white boy," or words to that effect.

---

[1]For purposes of this motion, the Court will construe the facts and all reasonable inferences in a light most favorable to plaintiff.

Defendant heard Jones's remark and reprimanded Jones by telling him that he would get lockdown time. Following the reprimand, defendant observed Jones walk away and say calmly, "all right, I understand," or words to that effect. Defendant did not separate Jones and plaintiff, or escort Jones to his cell.

Around this same time, a general lockdown for all the inmates in POD 7 D was scheduled to occur at approximately 1:50 p.m. for a shift change. The lockdown required that all the inmates return to their respective cells where they would be locked in for a short period of time. After Jones walked away from the reprimand, defendant ordered a lockdown for the shift change.

POD 7D has a main floor and an upper level, referred to as the mezzanine. The mezzanine is accessed from the main floor by two staircases. Both levels contain cells. Plaintiff and Jones were housed on the mezzanine level. When defendant ordered the lockdown for shift change, plaintiff proceeding to go up one of the staircases. When plaintiff went up the stairs, Jones, who was in the center area of the POD, turned and hurried up the stairs after plaintiff. Jones caught up with plaintiff on the stairs, but no fighting occurred on the stairs. Jones threatened plaintiff while he was on the stairs. Plaintiff believes defendant was in earshot when the threats were made.

Once the two inmates were at the top of the stairs, Jones physically attacked plaintiff. According to plaintiff, he was grabbed by the throat, thrown to the ground, and beaten repeatedly. The attack occurred approximately two to three minutes after Jones had first threatened plaintiff.

When the attack began, defendant was situated to the left side of the podium on the main floor watching the inmates, including plaintiff and Jones. It is disputed how far defendant was from the fight when it broke out. Plaintiff testified defendant was twenty to twenty-five feet away. Defendant did not immediately come to plaintiff's aid. Defendant continued to supervise the lockdown and

secure the area. Approximately a minute elapsed before he called for assistance. It was four minutes from the time the physical attack began to the time assistance arrived to break up the fight. Approximately ten minutes elapsed from the time Jones first yelled at plaintiff in front of defendant Crigler until the time the fight was over.

After the fight was broken up, plaintiff was first taken to the St. Louis County jail's infirmary. He was then taken, that same day, to St. Louis University Hospital where he was treated for cuts around his right eye and on the inside and outside of his bottom lip, all of which required stitches. Plaintiff contends he had a "goose egg" on his head, as well as bruising and swelling, and pain in his lower back. It is disputed whether physicians at the hospital prescribed him pain medication. Plaintiff testified that his injuries were "absolutely" painful and that he continues to have headaches.

The St. Louis County jail's Policies and Procedures manual states that the general duties of a housing unit officer include "closely monitoring the actions of the inmates in the housing unit and taking appropriate action when an inmate's behavior jeopardizes the orderly operation of the housing unit." Pl. Ex. 1 at 3. The manual also provides that if an officer encounters a situation that, in his or her judgment, requires force to maintain order, "if required, the supervisor and back-up officers will be summoned to the area by the most expedient means available, (i.e., two-way radio, personal duress alarm, panic alarm, telephone)." Def. Ex. C at 4-5.

*Discussion*

The Supreme Court has instructed that the Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Prison officials are required to take reasonable measures to "protect [detainees] from violence at the hands of other prisoners." Id. (internal punctuation and quoted case omitted). The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part of the penalty that criminal offenders pay for their offenses." See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

To prevail on an Eighth Amendment failure-to-protect claim, a plaintiff must make two showings. First, he must demonstrate that he suffered a sufficiently serious constitutional deprivation. Farmer, 511 U.S. at 834. The second requirement concerns the state of mind of the prison official who is being sued. It mandates that the plaintiff show that the official acted with deliberate indifference to the inmate's health or safety. The Eighth Circuit has held that deliberate indifference is the appropriate standard of culpability for claims by pre-trial detainee against prison officials. Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006).

**Did Plaintiff Suffer a Sufficiently Serious Deprivation?**

In order for a deprivation to be sufficiently serious in the context of a failure-to-protect claim, a plaintiff must establish that the prison official's act or omission "resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm." Young v. Selk, 508 F.3d 868, 872 (8th Cir.2007) (quotations omitted). Id. The determination of whether there was a substantial risk of serious harm is an objective one. Helling v. McKinney, 509 U.S. 25, 35-36 (1993).

The Court does not find plaintiff was incarcerated under conditions that posed a substantial risk of serious harm. Prior to the date of he assault, it is undisputed that there was no animosity

6

between Jones and plaintiff, other than minor verbal exchanges. In fact, plaintiff himself did not feel threatened by Jones up until the time of the incident. There is no evidence plaintiff ever requested to be moved from his housing unit or that he be segregated from Jones. And, there is nothing to suggest defendant was aware of the risk Jones posed. The undisputed facts in this case show that the incident was an isolated occurrence, which does not amount to conditions posing a substantial risk of serious harm. See Falls v. Nesbitt, 966 F.2d 375, 378 (8th Cir. 1992) ("[a] pervasive risk of harm requires evidence of frequent violence or [ ] assaults which places a prisoner or group of prisoners in reasonable fear for their safety; and prisoners must apprise the prison officials of the existence of the problem and the need for protective measures. In every case, a pervasive risk is something more than a single incident and something less than a riot.") (internal quotations omitted). Therefore, the Court finds plaintiff cannot establish the first element of his claim.

**Did Defendant Crigler Act with Deliberate Indifference?**

But even if plaintiff could establish he was incarcerated under conditions that posed a substantial risk of serious harm, he cannot show, even viewing the facts in a light most favorable to plaintiff, that defendant acted with deliberate indifference. The Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. Negligence is not sufficient to establish deliberate indifference. Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003). In order to be liable, the defendant "must have recklessly disregarded a known, excessive risk of serious harm to [the inmate's] safety." Id.

7

Plaintiff has failed to offer any evidence, such as prior history, to rebut defendant's assertion that he did not know prior to the assault that Jones posed a risk to plaintiff. Plaintiff points to the threat Jones made approximately two to three minutes before the assault occurred as evidence that defendant knew Jones posed a risk. While defendant admits he heard the threat, he testified that it was not unusual to hear such threats in prison and, according to him, there was nothing to indicate violence would ensue. As the Eighth Circuit has noted, "prisons are dangerous places," and "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998) (quotations omitted).

Plaintiff critiques defendant for doing nothing in response to Jones's threat. Plaintiff contends defendant should have escorted Jones to his cell or instructed him to use a different staircase. Defendant, however, did respond to Jones's threat by reprimanding Jones. Furthermore, in response to the reprimand, Jones's demeanor did not escalate, but rather he took it calmly. There is nothing to suggest defendant's response to the threat was unreasonable under the circumstances.

Plaintiff also faults defendant for failing to summon assistance immediately once the assault began. Defendant, however, did not ignore the attack or fail to summon assistance. Because the attack took place while the unit was in the midst of lockdown, defendant first waited until all the other inmates were in their cells and the unit was secure before calling for backup. It is undisputed that this only took one minute. Plaintiff fails to show how defendant's actions violated St. Louis County jail's policies or procedures. And, based on these facts, plaintiff cannot establish that

8

defendant Crigler recklessly disregarded his safety.[2] Thus, the Court finds defendant did not act with the requisite state of mind to establish a violation under the Eighth Amendment.

*Conclusion*

For all the above-stated reasons, plaintiff has failed to establish a claim against defendant Crigler under 48 U.S.C. § 1983 for derivation of his rights under the Eighth Amendment, and the Court will enter judgment in the defendant Crigler's favor.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Walter Crigler's motion for summary judgment is **GRANTED**. [Doc. 26]

**IT IS FURTHER ORDERED** that plaintiff Todd Sweet's complaint against Walter Crigler is **DISMISSED.**

A separate judgement shall accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___26th___ day of May, 2009.

---

[2]Plaintiff does not contend, and there would be no support for the notion that defendant Crigler should have intervened himself once the attack began. Plaintiff also does not fault defendant Crigler for the time it took other officers to respond to his call for assistance. Furthermore, there are no allegations plaintiff received inadequate medical attention.